UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CLYDE B. WILLIAMS,

    Petitioner,

v.                                                                                                                       Case No. 05-C-89

BYRAN BARTOW,

    Respondent.

**DECISION AND ORDER**

      Petitioner Clyde Williams is incarcerated at the Wisconsin Resource Center and has filed a petition for release under 28 U.S.C. § 2254. He is serving time under convictions of three counts of first-degree sexual assault of a child as a habitual criminal. On February 10, 2005, I issued an order under Rule 4 of the Rules Governing Habeas Corpus Cases in which I allowed six of Williams' claims to proceed. Those claims are: (1) ex post facto violation; (2) double jeopardy violation; (3) vindictive prosecution; (4) ineffective assistance of appellate counsel; (5) due process violation; and (6) speedy trial violation. The respondent concedes that these claims have been fully exhausted in state proceedings and that Williams' petition is timely. For the reasons given herein, I conclude that the petition should be denied.

**I. Background**

      The proceedings involved in convicting the petitioner followed a tortured path studded with delays, missing witnesses, postponed hearings, and other scheduling snafus. The state court of

appeals, in a published decision, thoroughly recounts the lengthy procedural history. *See State v. Williams,* 2004 WI App 56, 677 N.W.2d 691 (Wis. Ct. App. 2004). For present purposes, the following will suffice. Williams was tried in February 1997 for a sexual assault occurring in 1996. Due to a provocative question asked by defense counsel, the trial court declared a mistrial. The new trial occurred in July of the same year, and Williams was convicted. The trial court found ineffective assistance of counsel, however, and ordered a retrial. The state appealed the grant of a new trial, and between 1997 and 1999 the case was on appeal. The court of appeals found for Williams, and the wheels for a new trial went into motion in the autumn of 1999. The new trial was set to proceed in January 2000, and then in March, but the state obtained two adjournments. It was then set to proceed in June, but Williams himself successfully requested a delay until July.

When July came, the state sought a postponement due to difficulties in obtaining the presence of two other-acts witnesses it wanted to call. These witnesses were girls who had alleged in 1990 that Williams had assaulted them. Williams had not been charged in 1990 based on the prosecutor's apparent view that the evidence was not sufficient to convict him. Now, in the summer of 2000, the prosecutor threatened Williams that if he insisted on going to trial on the 1996 charge the state would bring charges based on the 1990 allegations as well. The state did bring those charges in July 2000.

Another year of adjournments followed, many of them with Williams' consent or acquiescence. In June 2001, Williams moved to dismiss the 1990 counts on the basis of vindictive prosecution. The court denied the motion on the grounds that the prosecutor in 2000 had new evidence justifying the charging decision, namely, the fact that the victim in the 1996 charge–also a young girl–had testified in the original trial of Williams in 1997. Finally, the third trial occurred

2

Case 1:05-cv-00089-WCG    Filed 12/13/05    Page 2 of 9    Document 34

on July 16, 2001, but that ended in a mistrial (without objection) and a new trial was convened the next day. In his fourth trial, Williams was convicted of three counts of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1). Other facts are set forth below as relevant to the legal issues Williams raises.

**II. Analysis**

Under the Antiterrorism and Effective Death Penalty Act, or AEDPA, a petitioner may be granted habeas corpus relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That is, relief is appropriate only if the state court "arrive[d] at a conclusion opposite to that reached by [the] Court on a question of law" or "if the state court confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" and reached a different result. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). With this deferential level of review in mind, I will now proceed to address the particular claims Williams now raises.

**1. *Ex Post Facto* Violation**

The petitioner's first claim is that the state court got it wrong when it sentenced him to two consecutive fifty-year sentences because the sentences exceeded the maximum in effect at the time the crimes were committed. The respondent concedes that the petitioner is entirely correct, but it contends that he already obtained this relief in the circuit court. Indeed, after a post-conviction motion, the Racine County Circuit Court changed Williams' fifty-year sentences to thirty-year sentences and issued an amended judgment. Williams' briefs do nothing to illuminate what further

3

relief, if any, would be forthcoming. Accordingly, the petition is denied with respect to his first claim.

**2. Double Jeopardy**

Williams' second claim was adequately addressed by the state court of appeals. In short, he claims that having to undergo a second trial after the first mistrial was a violation, under the Double Jeopardy Clause of the Constitution, of his right not to be tried twice for the same crime. The controlling Supreme Court precedent here is *Arizona v. Washington,* 434 U.S. 497 (1978). Like the present case, *Washington* involved the improper remark of a defense lawyer which caused the trial judge to declare a mistrial. The Supreme Court took the occasion to reiterate the rule that in order to obtain a second trial of a criminal defendant, a prosecutor must establish a "manifest necessity" for any mistrial declared over the objection of the defendant. *Id.* at 505. The Court, however, established that trial judges in such circumstances are entitled to substantial deference in their determination of what constitutes a manifest necessity: "the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Id.* at 511.

The Wisconsin Court of Appeals thoroughly discussed these issues and applied Supreme Court precedent correctly. *See State v. Williams,* 677 N.W.2d at 699. The prejudicial statement uttered by defense counsel in this case was a question implying that another witness, Thomas White, had himself sexually molested two children in the past. Questioning by the trial judge revealed no firm basis for the allegation, and, after hearing from both sides, the judge concluded that the prosecution's case was severely prejudiced by the question asked by Williams' counsel. This

4

Case 1:05-cv-00089-WCG   Filed 12/13/05   Page 4 of 9   Document 34

conclusion, and the court of appeals' affirmance of that conclusion, were neither an unreasonable application of controlling Supreme Court precedent, nor did they contradict any such precedent. 28 U.S.C. § 2254(d). The petition is therefore denied as to Williams' second claim.

**3. Vindictive Prosecution**

Williams also renews the claim that his conviction for two counts of child sexual assault was based on improper prosecutorial conduct, namely, the prosecutor's intent to punish him for his obtaining of a new trial in his other sexual assault case. Specifically, as recounted above, Williams was charged with two counts of sexual assault based on events occurring in 1990 only *after* he had obtained a successful reversal of his conviction (on ineffective assistance of counsel grounds) for the charge from 1996.

The applicable Supreme Court precedent holds that a presumption of prosecutorial vindictiveness arises when a prosecutor charges a defendant for more serious charges based on the same underlying conduct. *See Thigpen v. Roberts,* 468 U.S. 27 (1984); *Blackledge v. Perry,* 417 U.S. 21 (1974). For instance, if the prosecutor here had originally charged Williams with a misdemeanor, but then increased it to a felony–all based on the same conduct–there might well arise such a presumption. That is because the prosecutor, having all the relevant facts at his disposal, can be expected to bring the charges deemed most appropriate; if the charges are later increased, based on unrelated legal developments, one might well conclude that vindictiveness is present. But when the charges are factually unrelated, i.e., when charges are brought based on separate conduct, there is no presumption of vindictiveness. This fact was recognized by the court of appeals. The court cited the Eleventh Circuit's discussion of the matter in *Humphrey v. United States,* 888 F.2d 1546, 1549 (11th Cir. 1989), which came to the same conclusion: *Blackledge* and *Thigpen* do not apply

5

when there are "different charges based on different acts." That is exactly what happened here. Two sexual assaults from 1990 of different young girls gave rise to new charges unrelated to the charges stemming from Williams' conduct in 1996. The petition is therefore denied with respect to this claim.

**4. Ineffective Assistance of Appellate Counsel**

The respondent has construed the petition as claiming ineffective assistance based on two grounds: *ex post facto* violations and vindictiveness. The petitioner's briefs do nothing to illuminate his claims or call the government's construction of his claims into question, and I will accordingly proceed on that basis. Both underlying grounds for ineffective assistance were discussed above. Having found no *ex post facto* or vindictiveness claim, naturally I cannot find any grounds for ineffective assistance of appellate counsel both because the petitioner has not been prejudiced and because counsel's performance was not deficient.

**5. Speedy Trial**

Williams also claims violations of the Constitution stemming from the delay in proceeding to trial once he was charged. The applicable Supreme Court precedent, as identified by the court of appeals, is found in *Barker v. Wingo,* 407 U.S. 514 (1972). The Supreme Court identified four factors governing the speedy trial analysis: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530; *see also Owens v. Frank,* 394 F.3d 490, 503 (7th Cir. 2005).

At first glance, Williams' speedy trial claim appears well founded: after all, there was a substantial gap between the time the charges were brought and Williams' trial. But review of the lengthy procedural history of Williams' case reveals that most of the delay was either due to his own

affirmative conduct (e.g., seeking a continuance) or was not fairly attributable to any actions of the prosecutor. Indeed, he conceded as much at the court of appeals, where he contended that only about one year of the delay was the state's fault. The court of appeals disagreed. It noted first that the state could not be faulted for a one-month time lapse following its unsuccessful appeal of the initial grant of a new trial. The court also found that the state could not be blamed for a four-month delay owing to its inability to make contact with the victim (who had moved out of town), nor could it be held accountable for another four-month delay caused by the prosecutor's inability to produce other witnesses. Indeed, Williams' counsel had agreed, or at least acquiesced, in this latter postponement. Similarly, another month of delay was due to the unavailability of a witness who was undergoing surgery. All told, the court of appeals concluded that "at most four months could be considered as delay attributed to the State for the purpose of determining the merits of Williams' assertion of his speedy trial right." *Id.* at 702. (The delay was due to the trial court's scheduling error.)

Largely on that basis, the court of appeals concluded that the four month delay attributable to the state was not a speedy trial violation. Under the first two *Barker* factors, a period of four months caused by the state's delay is not particularly lengthy. Moreover, the court of appeals noted that Williams had not consistently demanded a speedy trial; at times he acquiesced in delays and at other times he requested them himself. Thus, under the third *Barker* factor, Williams' assertion of his speedy trial right was at best equivocal. This application of Supreme Court law was not erroneous, much less unreasonable under the AEDPA standards of 28 U.S.C. § 2254(d). Accordingly, the petition is denied on this ground as well.

7

Case 1:05-cv-00089-WCG    Filed 12/13/05    Page 7 of 9    Document 34

**6. Due Process**

Finally, Williams claims his due process rights were violated by the delay in charging him for sexual assaults that occurred in 1990. "Although statutes of limitation are the primary safeguard against the potential prejudice--i.e., faded memories, lost evidence, unavailable witnesses--that attends stale criminal charges, the due process clause plays a limited role in protecting against prosecutorial delay." *United States v. Anagnostou,* 974 F.2d 939, 941 (7th Cir.1992).

This claim was summarily rejected by the state courts, and Williams offers no coherent reason to find otherwise.[1] His petition suggests he was prejudiced by the delay because of witness memory issues or the difficulty of obtaining evidence, for example, of whether the doors of public park restrooms–the location of the 1990 crimes– would have been locked in 1990. Even accepting such claims as true, they would not implicate any due process rights because there is no indication that the delays were either intentional prosecutorial gambits to prejudice the defendant nor that they substantially prejudiced him. As the Supreme Court has put it, Williams would have to show that the "pre-indictment delay in this case caused substantial prejudice to [his] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion,* 404 U.S. 307, 324 (1971). Moreover, he has not established any credible claims of actually being prejudiced. *See United States v. Baker,* 40 F.3d 154, 158 (7th Cir. 1994)("Baker's motion simply alleged that the government's delay was an attempt 'to prejudice the Defendant in

---

[1] Because there is some doubt about whether the claim was addressed by the state courts on the merits, I do not defer to the state court's decision under AEDPA and instead apply a *de novo* level of review to this claim. *See Harrison v. McBride,* 428 F.3d 652, 665 (7th Cir. 2005).

his defense by relying upon lapses of memory from potential witnesses due to the length of time between gaining the information necessary for an indictment and bringing the indictment.'") Indeed, the burden is a high one, and Williams has not met it. "[O]nly the most egregious pre-indictment government delay--that which transgresses 'fundamental conceptions of justice' and 'the community's sense of fair play and decency' ...--is proscribed by the constitution." *Id.* (quoting *United States v. Lovasco,* 431 U.S. 783, 790 (1977)).

In sum, none of Williams' claims present any basis to grant the relief he seeks under 28 U.S.C. § 2254. Accordingly, the petition is denied and this case is dismissed.

**SO ORDERED** this   13th   day of December, 2005.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge